Nott, Ch. J.,
dissenting:
The declared purpose of the Navy personnel act is, in its own words (sec. 13):
“That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navjr and of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the- officers of corresponding rank in the Army.”
Complaints had existed for fifty years that a discrimination was shown bjr Congress against the Navy, and by this statute Congress determined that the two arms of the service should thenceforth be treated precisely alike; that the pay of the Army and the pay of the Navy should be one and the same thing. It was inevitable that in'the application of army law *131 to naval services doubts should arise, but in the application of the statute, the statute has given us one plain general rule for guidance, and that is that the pay of army officers and nav3r officers in like official circumstances shall be precisely alike, save one exception hereafter to be named.
For more than one hundred years the pay of the Navy had been a thing bjr itself, both in fact and in legislation. (Act March 27, 1794, 1 Stat. L., 351.) By this Navy personnel act all provisions relating to the pay of the Navy have been swept from the statute book. When we want to know what pay a naval officer should receive we must turn to the provisions regulating Army pay to see what the pay of an officer of relative rank may be; and when the statutes fixing and regulating Navy paj1, became obsolete all the distinctions and forms and terms of nav3r pa3r became obsolete with them. If the nomenclature of the two arms of the service had been the same, all that the statute need to have said would have'been, “Henceforth the pay of the officers of the Navy shall be the same as that of officers of the Army.”
The controlling purpose of the Navy pérsonnel act being to make navy pay and army pay identical, it becomes the controlling principle b3^ which the statute should be interpreted. The end always to be attained is that the pa37' of an officer of the Navy shall be-the same as the pay of an officer of the Army of relative rank in the same official circumstances. Only one exception of pay is made by the statute. It relates to the detached service of shore duty, and is contained in a proviso to the enacting clause, which is in these words:
u Provided, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty;”
Allowances and the 15 per centum, therefore, are alternative — when an officer is not entitled to the one he is entitled to the other.
But this does not mean that eveiy time when an officer sets his foot on diy land he shall be docked 15 .per cent of his pay. The proviso gives the officer the “allowances” of army officers — i. e., the allowances of army officers on dffiy. The next proviso, which is an amplification of the first, expressly *132 uses the term “shore -duty,” declaring that “when naval officers are detailed for shore duty beyond seas they shall receive the same p ay and allowances as are or majr be provided by or in pursuance of law for officers of the Army detailed for duty in similar places. ” Unquestionably what is meant ly the first proviso is that when officers are on detached service on shore and entitled to allowances they shall be docked 15 per cent of the army pay. Why the statute makes this discrimination against officers of the Navy is not apparent.
To clearly understand this proviso we must understand the condition of army officers “in similar circumstances.”
When 'an arny officer in the line is with his command he shaves the chances of his battalion or regiment or company. If the regiment is in tents, he is in a tent; if the regiment bivouacs in the open air, he bivouacs in the open air; if the regiment is in a fort, he takes such of the officers’ quarters as he can get. But when the officer is placed on detached sendee by proper authority he becomes entitled to quarters or commutation of quarters. It is not every officer absent from his regiment who is entitled to quarters or commutation of quarters, but only such as are placed on detached service by proper authority. When the officer is on detached service he is entitled to commutation, and when he is entitled to commutation it is because he is on detached service.
By analogy, the naval officer on board ship shares the comforts and hardships of those on board; when he is detached from his ship and assigned temporarily to another vessel, he there shares the comforts and hardships of those on board. But when he is placed on the detached service of “ shore duty ” he becomes entitled on the one hand to all the allowances of an army officer on detached service, except forage, and, on the other hand, loses 15 per cent of his regular, ordinary pay. By the same analogy he is not- entitled to these allowances unless he is placed on detached service by the proper authority, and' conversely, he does not lose 15 per cent of his pay until he is entitled to the benefit of the allowances.
As the army pay became the pay of the Navy when navy pay was abolished, so the different kinds of army pay become the pay of naval officers when the conditions of their official duty require a departure from regular or active service pajr. *133 Ordinary pay, longevity pajr, staff pay, leave-of-absenee pay, and waiting-orders pay of the Army become the ordinary pay, the longevity pay, the staff pay, the leave-of-absence paj^, and the waiting-orders pay of naval officers.
It is a well known and established principle in military affairs that an officer assigned to duty by an order issued by proper authority remains charged with that duty and subject to that order until it is superseded bjr another. But there may be an interregnum between the moment when an officer is relieved from one duty before he is assigned to another, and'during that interregnum ho is said to be awaiting orders.
In the present case there was such an interregnum consisting of a single day. But that fact can not affect the result, •for by the Revised Statutes (sec. 1265) army officers “waiting orders, shall receive full pay.”
I come to the consideration of the present case, or rather to one part of the present case — the pay of Captain Thomas when in transit from the command of a vessel on the Atlantic seaboard to the command of a vessel in Asiatic water’s.
This ordinary pay of a naval officer in the performance of ordinary naval duties has been designated as his “regular or normal ” pay. It is the regular or normal pay of aii officer for two reasons: First, because it is pay for the performance of the ordinaiy normal duties of a naval officer; and second, because it is prescribed by the enacting clause of the statute. IV hen Congress were dealing with ordinary pay for ordinary duties, they did so by prescribing the standard of pajT in the enacting clause; but when they were dealing with the exceptional services of naval officers detached from their vessels and assigned to shore duty, they put the legislation in the form of a proviso; that is to say, they made it an .exception to the general rule for naval pay — that is to say, the exceptional pay is for shore service. Of the proviso, it should be held — as was held long ago in the case of the United States v. Dickson (15 Pet., 141-165) — that it “carves special exceptions onty out of the enacting clause; and those who set up any such exception must establish it as being within the vrords as well as within the reason thereof.” Therefore, to bring the claimant within the terms of the proviso it is incumbent on the defendants to show that the claimant was u detailed” for duty on shore.
*134 The genera] principle which- should govern such cases is that where a naval officer is once assigned to the “regular or normal” du.tjT of a sailor (service on shipboard) he remains entitled not to “sea pa}-” but to the regular or normal-pay of an army officer of relative rank, unless he is by proper authority assigned to the exceptional service of shore duty.
What are the facts'in this case?
The facts are that an officer serving on a vessel on the Atlantic station was ordered to report to the Navy Department; that h.e reported December 12, 1899; that on the 13. h he was ordered to proceed to Hongkong for duty on the Asiatic station; that he crossed the continent and sailed ly merchant steamer from San Francisco; that he reported to the commanding officer and was immediately assigned to the command of the Baltimore. The .service which he performed can not be regarded as constructive^ shore duty. He traveled from one vessel to another partly by land and parity on merchant steamers, but that was not shore duty. The orders to come and go in effect precluded him from perform ing shore duty, and certainty gave him no right to allowances. In other words, it does not appear that the defendants have done what the decision in United States v. Dickson says it is incumbent on them to do — they have not shown that the officer was performing duty on shore, and they have not shown that he was assigned to duty on shore, and therefore they have not brought him “within the terms of the proviso.”
For some reason not disclosed to the court the Department wished to confer with this officer and ordered him to come to the Navjr Department. No duty was assigned to him there. He reported at the Department on one day and was ordered to proceed to the Asiatic station on the next day. He had not been detailed to shore duty when he mounted the steps of the Navy Department and reported to the Secretary. If it was not shore duty to go up the steps of the Navy Department under the first order I can not perceive wiry it was shore duty to go down again under the second, there having been no intermediate order of assignment to duty. Certainty the status of this officer continued unchanged until the Department changed it. But no new duty was assigned to him and *135 no change of status was effected. Under the orders be gained nothing in allowances and lost nothing in pay.
It must also be noted that any other rule of construction will embarrass the Secretary of the Navy in the administration of his duties. It is undoubtedly always the right and often the duty of the Secretary of the Navy to confer personally with naval officers. In this instance he majr have wished to obtain information concerning the vessel or fleet on the Atlantic station; or he may have wished to give the officer informal oral instructions concerning movements on the Asiatic station; or he may have wished to see personally and form some estimate of this officer’s intelligence or prudence. If the Secretary of the Navy can not call an officer into his office to confer with him without changing his legal status he will be loath to do so. Certainly such a conference for the information of the Secretary, for the good of the Navy, for public considerations, for no advantage or benefit to the officer, should not be required at his expense.
My conclusion is that this officer not having been “detailed” for “shore duty,” and not having been entitled to “allowances,” was not liable to be deprived of 15 per cent of his pair.